UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RUBEN JARAMILLO,

    Petitioner,

v.                                      CASE NO. 8:03-CV-2572-T-27EAJ

JAMES McDONOUGH,[1]

    Respondent.
_____/

### ORDER

Petitioner, a State of Florida inmate proceeding *pro se*, initiated this cause of action by filing a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 challenging his 2000 conviction entered in the Twelfth Judicial Circuit Court, Sarasota County, Florida (Dkt. 1). Respondent has filed a response to the petition (Dkt. 6) and Petitioner has filed a reply thereto (Dkt. 7). The matter is now before the Court for consideration on the merits of the Petition.

### Background

On July 25, 1996, Petitioner, then a resident of Hialeah, Florida, was contacted by telephone by Sergeant Norman Reilly, a Sarasota detective working undercover, regarding the purchase of a kilogram of cocaine. Over the next month, their negotiations progressed by telephone. Petitioner twice agreed to deliver cocaine to Sergeant Reilly in Sarasota, but failed to follow through.

---

[1] James McDonough, the current Secretary of the Florida Department of Corrections, is substituted as the proper party respondent for James V. Crosby, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

On August 25, 1996, Petitioner and co-defendant Adrian Hardisson drove from Miami to Sarasota and met Sergeant Reilly and Detective Harman at a fast-food restaurant. Hardisson and Sergeant Reilly discussed the exchange of the money for the cocaine, agreeing that Hardisson would return with the cocaine and the transaction would be conducted at the restaurant. Petitioner waited at the restaurant with Sergeant Reilly and Hardisson drove way. When Hardisson returned, he showed Sergeant Reilly the package containing the cocaine. Sergeant Reilly, accompanied by Hardisson and Petitioner, moved to his car, stating that he would get the money. Instead, he signaled for back-up. Petitioner and Hardisson were arrested and charged with trafficking in cocaine. After waiving his rights under *Miranda*,[2] Petitioner agreed to give a statement to Sarasota Detectives Sweeting and Ross.

On September 13, 1996, Petitioner was charged by Information with one count of trafficking in cocaine in an amount over 400 grams but less than 150 kilograms (Dkt. 6, Ex. 17, Vol. I at R. 12-13). Having been released on bond, Petitioner failed to appear for a motion hearing on July 8, 1997. *Id.* at R. 39. When Petitioner again failed to appear on July 10, 1997, the trial court issued a bench warrant for his arrest, *id.* at R. 41. His bond was forfeited on August 8, 1997, *id.* at 43.

On March 7, 2000, Hialeah Police Sergeant William O'Connell, with whom Petitioner had had previous contact, stopped a vehicle driven by Petitioner's father. During the traffic stop, Sergeant O'Connell saw that Petitioner, a passenger in the vehicle, was wearing a badge from his place of employment identifying him as Sigfredo Rivera. When confronted

---

[2]Established in *Miranda v. Arizona*, 384 U.S. 436 (1966), the Fifth Amendment right to remain silent is intended to operate prophylactically to protect a defendant from making self-incriminating statements during his arrest or interrogation that might be used against him in the course of subsequent legal proceedings. *Id.* at 478-79.

by Sergeant O'Connell, Petitioner did not attempt to conceal his true identity. Sergeant O'Connell discovered that Petitioner was in possession of a driver's license and various other forms of identification issued under the name Sigfredo Rivera. Petitioner's encounter with Sergeant O'Connell resulted in his arrest on the outstanding warrant and he was returned to Sarasota County for trial on the trafficking charge. *Id.* at R. 47.

Represented by retained counsel, Petitioner proceeded to a trial by jury on October 23, 2000. The theory of Petitioner's defense was that cocaine was never mentioned during any of his conversations with Sergeant Reilly, and while he was the driver of the car used to transport the cocaine to Sarasota, he did not know that the cocaine was in the car. Thus, Petitioner reasoned, he could not be convicted of having "possessed, manufactured, delivered or sold cocaine" (Dkt. 6, Ex. 11, Vol. II at 130). The jury returned a verdict of guilty as charged and he was sentenced to serve a 15-year minimum mandatory term of imprisonment. *Id.* at 120-24.

Represented by an assistant public defender, Petitioner pursued a direct appeal asserting that the trial court erred in: (1) giving an instruction on the principal theory when the information did not include this charge; (2) denying [Petitioner's] motion in limine to exclude the evidence collected by Sergeant O'Connell; and (3) failing to strike its spontaneous response to a juror's question regarding the relevance of the taped conversations (Dkt. 6, Ex. 2). Petitioner's convictions and sentences were affirmed on March 15, 2002, per curiam, without written opinion (Dkt. 6, Ex. 3). *See Jaramillo v. State*, 814 So. 2d 1042 (Fla. 2d DCA 2002). The mandate issued on April 15, 2002 (Dkt. 6, Ex. 4).

Petitioner filed an application for state post-conviction relief pursuant to Fla. R. Crim. P. 3.850 on October 15, 2002 raising five claims of ineffective assistance of counsel (Dkt.

6, Ex. 5). On October 21, 2002, the trial court entered an order denying Petitioner's claim that trial counsel prevented him from testifying on his own behalf and directing the State to respond to the remaining claims (Dkt. 6, Ex. 6). Having the benefit of the State's response, the trial court summarily denied Petitioner's Rule 3.850 motion on January 21, 2003 (Dkt. 6, Ex. 8). Petitioner filed a reply to the State's response on January 22, 2003 in which he requested leave to amend his Rule 3.850 motion by adding a sixth claim that the trial court erred in imposing the 15-year mandatory sentence for trafficking in cocaine. On February 10, 2003, Petitioner field a motion to recall the order denying his Rule 3.850 motion (Dkt. 6, Ex. 10). Petitioner's motion to amend and motion to recall were denied (Dkt. 6, Ex. 11). The trial court's denial of Petitioner's Rule 3.850 motion was affirmed on August 22, 2003, per curiam, without written opinion (Dkt. 6, Ex. 15). *See Jaramillo v. State*, 856 So.2d 994 (Fla. 2d DCA 2003) (table decision). The mandate issued on September 15, 2003 (Dkt. 6, Ex. 16).

Petitioner then filed the instant petition for federal habeas relief asserting three of the five grounds of ineffective assistance of counsel raised in his Rule 3.850 motion. Respondent acknowledges that the petition is timely but argues that it should be denied because Petitioner has failed to make the showing necessary for relief under 28 U.S.C. § 2254(d)-(e) (Dkt. 6 at 12). Having reviewed the record, the parties' arguments, applicable statutes, and controlling case law, for reasons set forth below, this Court agrees with Respondent.

**Standard of Review**

Pursuant to 28 U.S.C. § 2254(a), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), enacted and effective on April 24, 1996, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in

-4-

custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Where a state court initially considers the issues raised in the petition and enters a decision on the merits, 28 U.S.C. § 2254(d) governs the review of those claims. See *Penry v. Johnson,* 532 U.S. 782, 792 (2001); *Henderson v. Campbell,* 353 F.3d 880, 889-90 (11th Cir. 2003).

Habeas relief may not be granted with respect to a claim adjudicated on the merits in a state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). *Price v. Vincent,* 538 U.S. 634, 638-39 (2003); *Clark v. Crosby,* 335 F.3d 1303, 1308 (11th Cir. 2003). Finally, a state court's factual finding is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Henderson,* 353 F.3d at 890-91.

**Evidentiary Hearing**

To be entitled to an evidentiary hearing on habeas claims, the petitioner must "alleges facts that, if proved at the hearing, would entitle petitioner to relief." *Breedlove v. Moore,* 279 F.3d 952, 960 (11th Cir. 2002) (citation omitted). For reasons discussed below, an evidentiary hearing is not required for the disposition of this matter. Rules Governing Section 2254 Cases 8(a). *See Atwater v. Crosby,* 451 F.3d 799, 812 (11th Cir. 2006) (addressing the petitioner's claim that his requests for an evidentiary hearing on the issue of trial counsel's effectiveness during the penalty phase of his trial in both the state and

-5-

federal courts were improperly denied, the court held that an evidentiary hearing should be denied "if such a hearing would not assist in the resolution of his claim.").

## Discussion

Since Petitioner's conviction was entered after AEDPA was enacted, his petition is subject to the provisions thereof. Because a state court initially considered the issues raised in the petition and entered a decision on the merits, § 2254(d) governs the review of Petitioner's claim. *See Mobley v. Head,* 267 F.3d 1312, 1316 (11th Cir. 2001).

Petitioner raises the following claims for relief:

1. Whether trial counsel provided ineffective assistance in failing to file a pretrial motion to suppress statements;

2. Whether trial counsel provided ineffective assistance in failing to prepare and adequately investigate the case; and

3. Whether trial counsel provided ineffective assistance in conceding Petitioner's guilt.

(Dkt. 1). To establish a prima facie claim of ineffective assistance of counsel at trial, Petitioner must show that trial counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance is performance which is objectively unreasonable under prevailing professional norms. *Id.* at 688. Prejudice results when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

"[T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776 (1987)). Because the ultimate resolution of ineffective assistance of counsel claims is a mixed question of law and fact,

*Thompson v. Haley*, 255 F.3d 1292, 1297 (11th Cir. 2001); *Meeks v. Moore*, 216 F.3d 951, 959 (11th Cir. 2000), the presumption of correctness contained in § 2254(e)(1) does not apply to this determination. *Parker v. Head*, 244 F.3d 831, 835-37 (11th Cir. 2001). State court findings of historical facts made in the course of evaluating an ineffectiveness claim are, however, subject to a presumption of correctness under 28 U.S.C. § 2254(e) unless the petitioner demonstrates by clear and convincing evidence that they are incorrect, *see Williams v. Taylor,* 529 U.S. 362, 412-13 (2000), a burden that Petitioner has failed to meet. *See* § 2254(e)(1).

A state court is not required to cite the *Strickland* standard for ineffective assistance of counsel in support of its findings. All that is required is that neither its reasoning nor its result contradicts Supreme Court precedent. *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003); *Early v. Packer*, 537 U.S. 3, 8 (2002) (finding that a state court does not have to cite the Supreme Court precedent, or even be aware of it, so long as its decision is not inconsistent therewith); *Parker v. Sec'y of Dep't of Corr.*, 331 F.3d 764, 775-76 (11th Cir. 2003). Thus, to prevail on his ineffective assistance of counsel claims, Petitioner must establish that the state court incorrectly applied the *Strickland* standard in reaching its determination that the claims raised in his state habeas petition lacked merit.

Finally, a petitioner must meet both prongs of the *Strickland* test. *Strickland*, 466 U.S. at 697. *See also Sims v. Singletary*, 155 F.3d 1297, 1305 (1998) (citing *Oats v. Singletary*, 141 F.3d 1018, 1023 (11th Cir. 1998)).

**Grounds One and Two**

Directing the Court's attention to trial testimony by Sergeants O'Connell and Reilly, Petitioner contends in Ground One that his due process rights were violated when the trial

court entered a dispositive order on his Rule 3.850 motion without holding an evidentiary hearing to determine whether trial counsel was ineffective in failing to adequately investigate his case. In Ground Two, Petitioner asserts that trial counsel was ineffective in failing to (1) depose Sergeant O'Connell and move to suppress statements Petitioner made to him following the March 7, 2000 arrest in Hialeah, Florida; and (2) review the August 25, 1996 audio tape made by Sergeant Reilly during the drug transaction. Since Petitioner has commingled the two claims, they will be discussed together.

First, since a state court's failure to hold an evidentiary hearing on a collateral claim does not state a federal constitutional violation, it is not a basis for federal habeas corpus relief. See, e.g., Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir. 1987) (where a claim goes to issues unrelated to the cause of the petitioner's detention, the claim does not state a basis for habeas relief). Therefore, insofar as Petitioner's claim is based on the trial court's failure to hold an evidentiary hearing, the claim lacks merit. See Anderson v. Crosby, 462 F.3d 1319, 1330 (11th Cir. 2006).

In its order rejecting these claims, the trial court set out the following findings of fact and conclusions of law:

1. The Defendant was denied the effective assistance of counsel by counsel's failure to seek suppression of the Defendant's statement to Detective William O'Connell.

The Defendant contends counsel failed to file a motion to suppress the statements given to Detective William O'Connell of the Hialeah, Florida police department. The Defendant contends his statements were involuntary because Detective O'Connell did not administer *Miranda* warnings and he promised the Defendant that if he gave information, he would receive a lower sentence at the request of the State Attorney's office. Further, the Defendant contends that counsel never took the deposition of Detective O'Connell prior to trial[.]

The State argued that the Defendant's claim should be denied because the trial transcript and taped statements[3] received in evidence at the Defendant's trial indicate that the Defendant's statement was voluntary and, therefore, the Defendant was not prejudiced by counsel's failure to seek suppression of his statements.

The Defendant's Motion is denied. The trial transcripts indicate that both by proffer and during his testimony, that Detective O'Donnell [sic] read the *Miranda* warnings to the Defendant and he voluntary [sic] waived his rights and spoke with the detective. (*See* attached transcript, pp. 215-217 and 229-230). Further, the taped statement that was received in evidence at the Defendant's trial clearly established that the Defendant's statement was given voluntarily and it refutes the Defendant's claims regarding promises. (*See* tape recording attached to State's Response as exhibit 2). As a result, the Defendant has not shown that he was prejudiced by counsel's alleged failure to seek suppression of his statement because a motion to suppress would have been denied. There is no evidence from the trial transcript or from the taped statement that the Detective O'Connell made any promises, either direct or implied to get the Defendant to waive his rights and make the statement. Further, the Defendant admits in his Motion that he did not cooperate with the detective in supplying the information that allegedly would have induced such a promise. See *Albritton v. State*, 769 So. 2d 438 (Fla. 2d DCA 2000).

2. The Defendant was denied the effective assistance of counsel by counsel's failure to adequately investigate the Defendant's case.

The Defendant contends that counsel failed to adequately investigate the Defendant's case in a number of areas. First, the Defendant points to counsel's failure to take Detective O'Connell's deposition, but instead, counsel agreed to take telephone testimony of the detective. The Defendant contends Detective O'Connell's testimony was different in a number of respects from his pretrial proffer and, had counsel taken his deposition, counsel could have impeached the detective with his pretrial deposition. Further, the Defendant claims counsel failed to investigate and review the audiotape of the undercover drug deal that lead to his arrest. The Defendant contends that the recorded audiotape would have show [sic] that the Defendant had no knowledge of cocaine in the vehicle that the undercover officer and the co-defendant were in at the time of the offense. Finally, the Defendant alleges counsel failed to review the records of his unrelated case, which lead to the Defendant's rearrest on the outstanding warrant, that the

---

[3]In support of its response to the Rule 3.850 motion, the State submitted copies of the audio tapes recorded during Petitioner's interview with Sergeant O'Connell and the drug transaction. Having the benefit of the transcript of Petitioner's interview with Detectives Sweeting and Ross on August 26, 1996, following his arrest in Sarasota, Florida, the Court concludes that a review of these audio tapes is not required for the disposition of Petitioner's claim. Enlargement of the record is not, therefore, necessary.

> Defendant claims would have shown that his statements to Detective O'Connell were involuntary.
>
> The State responded that the Defendant's Motion should be denied because defense counsel spoke to the detective by telephone and the testimony given in court was consistent with that conversation. Further, the State argued that the Defendant has not shown he was prejudiced because the Defendant's admission was provided in discovery and Detective O'Connell was not subject to impeachment based upon the admission.
>
> The Defendant's Motion is denied. The transcript of the trial refutes the Defendant's claim that counsel's telephone conversation was inadequate because the pretrial proffer by Detective O'Connell was consistent with his trial testimony. (*See* attached transcript, pp. 13-15, 214-235). Although defense counsel was surprised at the testimony concerning Defendant's admission regarding his awareness of the cocaine, the admission was provided in discovery and was consistent with Detective O'Connell's testimony. (*See* attached Supplementary Discovery dated August 5, 2000, September 8, 2000 and October 23, 2000). This admission would not have provided impeachment for defense counsel because the detective testified consistently with that admission. Defense counsel appropriately cross examined Detective O'Connell concerning the Defendant's awareness of the cocaine in the vehicle. As a result, the Defendant has failed to show that counsel's error was so serious that the outcome of the proceeding would have been different absent the error.
>
> With respect [to] the audiotapes of the drug transaction, although the tapes are not models of clarity, they do show that the Defendant was involved in the drug transaction. (*See* tape attached as Exhibit 5 to State's Response). Further, the partial inaudibility of the tapes does not preclude their admission. *See Gonzalez v. State*, 571 So. 2d 1346, 1352 (Fla. 3d DCA 1990).
>
> With respect to the arrest records of his unrelated case, the Defendant's Motion is insufficient in that he has failed to specifically point to what grounds for impeachment of his statement would have been provided by review of those records. Although the Defendant alleges that a review of the records would have provided grounds for suppression of his statements, that claim is denied for the same reasons as given in this order under ground one above.

Dkt. 6, Ex. 8 at 4-7 (footnote added).

**Statements to Sergeant O'Connell**

Petitioner alleged in his Rule 3.850 motion that statements he made during his arrest in Hialeah were involuntary because Sergeant O'Connell did not administer *Miranda*

warnings and he promised Petitioner that if he cooperated with law enforcement he would receive a lower sentence. The only issue Petitioner raises in his § 2254 petition is whether trial counsel was ineffective for failing to move to suppress his statements to Sergeant O'Connell because he failed to apprise Petitioner of his rights under *Miranda*.

Before trial commenced, trial counsel filed a motion in limine seeking to preclude testimony by Sergeant O'Connell concerning Petitioner's failure to appear (Dkt. 6, Ex. 11 at R. 66-67). While trial counsel did not depose Sergeant O'Connell, she did conduct a telephonic interview with him during which she took extensive notes that she reviewed with him on the morning of the trial. When the case was called for trial, trial counsel reminded the trial judge that there were pretrial motions which needed to be addressed before the trial commenced. *Id.* at Tr. 4. Following jury selection, the trial court heard argument on the motions.

> Trial Counsel: The state attorney listed fairly recently – they were going to use a Sergeant O'Connell from Miami to testify to the fact that defendant made statements to him about wanting to leave the area; that he was afraid of 15 years minimum mandatory.
>
> . . . . .
>
> Your Honor. I have been in contact with Sergeant O'Connell and he indicated that when he saw [Petitioner] that [Petitioner] on his own and immediately [sic]. You know, In fact, Mr. O'Connell, Sergeant O'Connell had had contact with [Petitioner] in the past. The only statements that he made was that he was facing 15 years.
>
> Prosecutor: . . . . And, Ms. McCurry spoke with Sergeant O'Connell over the telephone and Sergeant O'Connell informed her that this defendant changed his identity to Sigfredo Rivera. We have the ID card as well as the documentation – his ID card as far as his work was concerned, that he did that because he was – that he did something stupid, Your Honor, that he was going to make – believe [sic] he told Sergeant O'Connell that he was going to make some money from the deal and he'd made admissions that he was

-11-

> driving to Sarasota with the – with the drugs and he got scared and that's why he did that.
>
> Your Honor, those can certainly – that is certainly consciousness of guilt by this defendant. It is certainly statements against penal interests by this defendant. . . .

Dkt. 6, Ex. 11, Vol. I at Tr. 12-14. Persuaded by the holding in *Harold v. State* that evidence regarding the defendant's conviction for failure to appear for a previous trial date in his case was admissible to show flight and establish guilt, the trial court denied trial counsel's motion. 579 So.2d 908 (Fla. 5th DCA 1991).

A review of the record confirms that the prosecutor's statement that trial counsel was placed on notice more than three months before trial that Sergeant O'Connell would testify that Petitioner stated he knew cocaine was in the car when he drove from Miami to Sarasota on August 25, 1996. *See* Dkt. 6, Ex. 7, Ex. 4 thereto; Ex. 11, Vol. III at 233. In its Supplemental Discovery Exhibit, mailed to trial counsel on August 5, 2000, the State advised trial counsel that Sergeant O'Connell would testify that "[Petitioner] admitted knowledge of the transaction; [Petitioner] made admissions to Sgt. O'Connell at time of apprehension; . . . [Petitioner] said that he would receive a part of the money from the transaction; . . . changed identity to avoid this case; see Sgt. O'Connell for other admissions" (Dkt. 6, Ex. 7, Ex. 4 thereto).

Notwithstanding Petitioner's assertions to the contrary, the transcript confirms that Detective O'Connell did testify that he read Petitioner his rights under *Miranda* and Petitioner indicated that he understood and waived those rights. As to the voluntariness of his statements, Petitioner fails to assert, much less demonstrate, that Sergeant O'Connell's conduct during the arrest, the drive to the police station, or the interrogation was in any way coercive, and no such impropriety is apparent in the record.

Unless Petitioner can show that trial counsel's performance prejudiced his defense, he cannot prevail on this claim. This Court agrees with the trial court's finding that Petitioner has not met the second prong of the *Strickland* test. As discussed below, given Petitioner's post-*Miranda* statement to Detectives Sweeting and Ross that he knew there was cocaine inside the car, Petitioner cannot demonstrate that without Sergeant O'Connell's testimony, there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

**Statements to Sergeant Reilly**

Likewise, Petitioner's assertion that trial counsel was ineffective in failing to "review and evaluate a recorded wired conversation" of the August 25, 1996 drug transaction lacks merit. Sergeant Reilly testified that an audio tape was made of his conversations with Petitioner and co-defendant Hardisson during the transaction (Dkt. 6, Ex. 11, Vol. III at 154). According to Petitioner, had trial counsel reviewed the recording, she would have "discovered that Petitioner had no knowledge of the cocaine presence [sic] even being in the car" (Dkt. 2 at 19).

Petitioner further contends that the State took a contradictory position on the quality of the recording. The transcript rebuts Petitioner's assertion. During discussions held prior to jury selection, the prosecutor informed the trial court that the audio tape was "inadmissible" as evidence because it contained references to other undercover operations. The prosecutor made no representation regarding the quality of the audio tape during said discussions, *see* Dkt. 6, Ex. 11, Vol. II at Tr. 34-35. Sergeant Reilly later testified that he had listened to the tape and "the quality at this point is not real good, we were [sic] a lot of traffic and you hear a lot of background noise." *Id.* at 155.

Assuming, without deciding, that the word cocaine was not, as Petitioner contends, mentioned by him during the transaction, this would not negate Sergeant Reilly's testimony that Petitioner did not abandon the drug transaction that Petitioner himself arranged before leaving Miami. The evidence was sufficient to show that Petitioner entered into an agreement to sell Sergeant Reilly a kilogram of cocaine. Whether the agreement was abandoned or continued with Petitioner's acquiescence, knowledge, and assistance was a question of fact for the jury to decide.

The trial court instructed the jury on the concept of principals in accordance with the State's standard jury instructions. To be guilty as a principal for a crime physically committed by another, one must intend that the crime be committed and do some act to assist the other person in actually committing the crime. *Banks v. State,* 790 So.2d 1094, 1098 n. 2 (Fla. 2001). *See also Staten v. State,* 519 So.2d 622, 624 (Fla.1988); Fla. Stat. § 777.011 (1997). The Florida Supreme Court held as follows in *State v. Roby*:

> Under our statute, therefore, a person is a principal in the first degree whether he actually commits the crime or merely, aids, abets or procures its commission, and it is immaterial whether the indictment or information alleges that the defendant committed the crime or was merely aiding or abetting in its commission, so long as the proof establishes that he was guilty of one of the acts denounced by the statute.

246 So.2d 566, 571 (Fla. 1971). *See also United States v. Hornaday,* 392 F.3d 1306, 1311-12 (11th Cir. 2004); *Stephenson v. State,* 371 So.2d 554, 555 (Fla. 2d DCA 1979) ("[A] charge of substantive crime may be proved by evidence of aiding and abetting. Arrangement or participation in the sale of drugs is sufficient for an aiding and abetting conviction"(citation omitted)). Here, a reasonable juror could find that Petitioner was guilty as a principal based on Sergeant Reilly's testimony regarding the overt acts Petitioner took

in furtherance of the drug transaction. Petitioner does not contend that he renounced the agreement he made with Sergeant Reilly before the cocaine changed hands.

Moreover, in the recorded post-*Miranda* statement Petitioner gave when interviewed by Detectives Sweeting and Ross shortly after his 1996 arrest, Petitioner admitted that he and co-defendant Hardisson planned to bring the cocaine to Sarasota for delivery to "Norm." Petitioner further stated that Hardisson "provide[d] [him] with the cocaine prior to coming to Sarasota to met Norm." According to Petitioner, when Hardisson arrived at his house, Hardisson told Petitioner that he had the cocaine. Petitioner further acknowledged knowing that Hardisson placed the cocaine somewhere inside the car. Petitioner denied, however, seeing Hardisson remove the cocaine from the car after they arrived in Sarasota. Petitioner told the Detectives that he and Hardisson had agreed to sell the kilo of cocaine to Norm for $23,000.00, and he and Hardisson were to receive $1,000.00 each for handling the transaction.

Detective Sweeting testified during the trial and the jury was provided a transcript of the audio tape of his interview with Petitioner to read as the State played the recording during the trial. The Court concludes that Petitioner has failed to demonstrate how trial counsel's failure to listen to the audio tape of the transaction prejudiced his defense.

Petitioner fails to establish that the state court's adjudication of Grounds One and Two was contrary to or an unreasonable application of clearly established Federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. Having failed to make the necessary showing, Petitioner has not demonstrated that he is entitled to federal habeas relief on these claims.

**Ground Three**

In Ground Three, Petitioner claims that trial counsel was ineffective for conceding his guilt during her closing argument. Specifically, Petitioner objects to the following:

> Ladies and gentlemen, I'm going to begin this morning by telling you what Ruben did wrong. He called an undercover officer, Norm; he talked to Norm several times on the telephone about drugs. He drove to Sarasota with Adrian, the person who did the drug deal; he used a fake I.D. to get a job. And he didn't come to court because, as you heard, he was afraid of the lengthy sentence.
>
> You may not like all of that, you may hate all that, but Ruben has not been charged with having drug related conversations, with driving a car, with using fake I.D. or not coming to court. He's on trial, ladies and gentlemen, for trafficking in cocaine and to convict him you must be convinced that the State has proved to you every element, every piece, every block of the crime.

Dkt. 6, Ex 11, Vol. IV at 267-68. In rejecting this claim, the trial court found as follows:

> 3. The Defendant was denied the effective assistance of counsel by counsel's concession of the Defendant's guilt in closing argument.
>
> The Defendant contends his attorney conceded his guilt in closing arguments when she argued that the Defendant had been a fugitive for a number of years because he feared conviction and a fifteen year sentence and that he knew about the drug deal that was alleged to have occurred. The Defendant contends he never consented to his attorney's strategy, which the Defendant contends was tantamount to an admission of Defendant's guilt.
>
> The State argued that the Defendant's Motion was refuted by the trial record that shows counsel's statement was taken out of context by the Defendant. The argument given by counsel was intended to convey to the jury that the Defendant was a fugitive because he had heard that the co-defendant was trying to blame the defendant for the entire transaction.
>
> The Defendant's Motion is denied. Although counsel made the statement seemingly incriminating the Defendant in the crime, the statement is taken out of context in that defense counsel's entire summation centered on the State's failure to prove the elements of the crime charged against the Defendant. (*See* transcript, pp. 267-278, 294-298). Defense counsel's statements, when taken in context of her entire summation, clearly were intended to explain why the Defendant had been a fugitive and why he had given the statement to Detective O'Connell.

Dkt. 6, Ex. at 8.

Under Florida law, to be convicted of the offense of trafficking in cocaine, four elements must be established beyond a reasonable doubt: (1) that the defendant knowingly purchased or possessed a certain substance, (2) the substance was cocaine, (3) the quantity was 28 grams or more, and (4) the defendant knew the substance was cocaine. Fla. Stat. § 893.135(1) (1997). *See also State v. Dominguez*, 509 So.2d 917 (Fla. 1987); *Abbott v. State*, 744 So.2d 578, 579 (Fla. 2d DCA 1999). The State may establish its case either by direct or circumstantial evidence. *Varas v. State*, 815 So.2d 637 (Fla. 3d DCA 2001). The transcript supports the trial court's finding that, when taken in context, trial counsel's closing argument focused on the State's failure to prove the elements of the crime charged. Dkt. 6, Ex 11, Vol. IV at Tr. 267-278, 294-298.

During her opening statement, trial counsel set out the defense strategy, telling the jury that the State's case was all about "talking, talking, talking," but the conversations about which they would hear did not prove that Petitioner "possessed, manufactured, delivered or sold cocaine" (Dkt. 6, Ex. 11, Vol. II at 130). Other than his flight and change of identity, the things referenced by trial counsel during closing argument about which Petitioner now complains merely reflect conduct that Petitioner admitted having engaged in during the Sweeting/Ross interview -- none of which is an element of the crime with which Petitioner was charged. Trial counsel conceded that Petitioner had done things "wrong" and the State could prove those things, drawing distinctions between the charged offense and the acts the State argued established his guilt in an attempt to show that even if they believed everything the State said, the State had not carried its burden of establishing beyond a reasonable doubt that Petitioner was guilty of trafficking in cocaine. Trial counsel's concessions were merely a reiteration of statements to law enforcement officers that Petitioner does not contest having made.

-17-

Since the jury was only considering Petitioner's role in the drug transaction, any comments regarding uncharged offenses, i.e., flight, did not have a detrimental effect on Petitioner's jury trial. Because trial counsel did not concede guilt on the trafficking in cocaine offense, Petitioner's ineffective assistance of counsel claim fails.

The trial court correctly applied the two-prong test for ineffective assistance of counsel claims as enunciated in *Strickland* and its progeny. *See* 28 U.S.C. 2254(d). Thus, Ground Three should be denied.

### Conclusion

For the foregoing reasons, the Court finds that Petitioner has failed to establish that he is entitled to federal habeas relief.

ACCORDINGLY, the Court **ORDERS** that:

1. The Petition for Writ of Habeas Corpus is **DENIED** (Dkt. 1).

2. The **Clerk** shall enter judgment against Petitioner, terminate all pending motions, and close this case.

**ORDERED** in Tampa, Florida, on March 28th, 2007.

_____
JAMES D. WHITTEMORE
United States District Judge

Copies furnished to:
All Parties/Counsel of Record